**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| DANIEL BRINK, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civil Action No. 11-1733 (EGS) |
| v. | ) |
| | ) |
| XE HOLDING, LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OPINION**

Plaintiffs, thirty-one civilian government contractor
employees (and/or their surviving relatives), bring this
purported class action against twenty-three defendants, which
include United States government contractors (the "Contractor
Defendants") and their insurance carriers (the "Insurer
Defendants") (collectively, "Defendants").[1]  Plaintiffs allege
violations of the Longshore and Harbor Workers' Compensation
Act, 33 U.S.C. § 948a, the Racketeer Influenced and Corrupt
Organizations Act ("RICO"), 18 U.S.C. § 1861, *et seq.*, the
Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et
seq.*, and several common law tort claims, based upon Defendants'
handling of Plaintiffs' claims for medical benefits under the

---

[1] Pursuant to a Stipulation filed on August 27, 2012,
Plaintiffs dismissed all claims against Defendant Parsons Group.
*See* Docket No. 108.

Defense Base Act.   Pending before the Court are fourteen motions

to dismiss pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(3), and

12(b)(6) of the Federal Rules of Civil Procedure.[2]   Upon

---

[2] In resolving the pending motions, the Court has relied on
the following documents: Plaintiffs' Second Amended Complaint
[Docket No. 50]; Contractor Defendants' Joint Motion to Dismiss
[Docket No. 80]; Plaintiffs' Opposition to Contractor
Defendants' Joint Motion to Dismiss [Docket No. 114]; Contractor
Defendants' Joint Reply [Docket No. 127]; Insurer Defendants'
Joint Motion to Dismiss [Docket No. 82]; Plaintiffs' Opposition
to Insurer Defendants' Joint Motion to Dismiss [Docket No. 115];
Insurer Defendants' Reply [Docket No. 138]; Plaintiffs'
Opposition to Defendant KBR and Halliburton's Motion to Dismiss
[Docket No. 121]; Defendants KBR and Halliburton's Reply [Docket
No. 130]; Defendant Academi's Motion to Dismiss [Docket No. 83];
Plaintiffs' Opposition to Defendant Academi's Motion to Dismiss
[Docket No. 109]; Defendant Academi's Reply [Docket No. 133];
Defendants Wackenhut International and Ronco Consulting's Motion
to Dismiss [Docket No. 85]; Plaintiffs' Opposition to Defendants
Wackenhut International and Ronco Consulting's Motion to Dismiss
[Docket No. 111]; Defendants Wackenhut International and Ronco
Consulting's Reply [Docket No. 134]; Defendant Northrop
Grumman's Motion to Dismiss [Docket No. 87]; Plaintiffs'
Opposition to Defendant Northrop Grumman's Motion to Dismiss
[Docket No. 120]; Defendant Northrop Grumman's Reply [Docket No.
140]; Defendant Global Linguist Solutions' Motion to Dismiss
[Docket No. 88]; Plaintiffs' Opposition to Defendant Global
Linguist Solutions' Motion to Dismiss [Docket No. 117];
Defendant Global Linguist Solutions' Reply [Docket No. 136];
Defendants AECOM Government Services and Combat Support
Associates' Motion to Dismiss [Docket No. 89]; Plaintiffs'
Opposition to Defendants AECOM Government Services and Combat
Support Associates' Motion to Dismiss [Docket No. 113];
Defendants AECOM Government Services and Combat Support
Associates' Reply [Docket No. 135]; Defendant Exelis Systems'
Motion to Dismiss [Docket No. 91]; Plaintiffs' Opposition to
Defendant Exelis Systems' Motion to Dismiss [Docket No. 116];
Defendant Exelis Systems' Reply [Docket No. 139]; Defendant L-3
Services' Motion to Dismiss [Docket No. 93]; Plaintiffs'
Opposition to Defendant L-3 Services' Motion to Dismiss [Docket
No. 119]; Defendant L-3 Services' Reply [Docket No. 131];
Defendant US Investigations Services' Motion to Dismiss [Docket
No. 94]; Defendant USIS International's Motion to Dismiss

consideration of the motions, the responses and replies thereto, the relevant law, and the entire record in this case, the Court will **GRANT** the motions and **DISMISS** Plaintiffs' claims.

I.   **BACKGROUND**

   A.   **Statutory Background**

   The Defense Base Act ("DBA"), 42 U.S.C. § 1651 *et seq.*, establishes a uniform, federal compensation scheme for civilian contractors and their employees for injuries sustained while providing functions under contracts with the United States outside its borders.   The DBA applies "the provisions of the Longshore and Harbor Workers' Compensation Act [33 U.S.C. § 901 *et seq.* (the "LHWCA" or the "Longshore Act")] . . . in respect to the injury or death of any employee engaged in any employment . . . under a contract entered into with the United States . . . where such contract is to be performed outside the continental United States . . . ."   42 U.S.C. § 1651(a)(4).   As Plaintiffs

---

[Docket No. 95]; Plaintiffs' Combined Opposition to Defendants US Investigations Services and USIS International's Motions to Dismiss [Docket No. 122]; Defendant US Investigations Services' Reply [Docket No. 128]; Defendant USIS International's Reply [Docket No. 129]; Defendant DynCorp International's Motion to Dismiss [Docket No. 99]; Plaintiffs' Opposition to Defendant DynCorp International's Motion to Dismiss [Docket No. 112]; Defendant DynCorp International's Reply [Docket No. 132]; Defendant CNA Financial's Motion to Dismiss [Docket No. 90]; Plaintiffs' Opposition to Defendant CNA Financial's Motion to Dismiss [Docket No. 110]; Defendant CNA Financial's Reply [Docket No. 137]; Defendant Khudairi Group's Motion to Dismiss [Docket No. 100]; Plaintiffs' Opposition to Defendant Khudairi Group's Motion to Dismiss [Docket No. 118]; Defendant Khudairi Group's Reply [Docket No. 141].

note at the outset of their Complaint, "[the] DBA system is administered according to statute by the United States Department of Labor (DOL), in the administrative Office of Workers' Compensation Programs (OWCP), subject to hearing and decision in contested cases by the Office of Administrative Law Judges (OALJ) of the DOL, and administrative appeal to the Benefits Review Board. If a matter works its way through the OWCP, OALJ, and Board, only then can a party appeal into the federal courts." Second Am. Compl. ("SAC") ¶ 2 (citing 33 U.S.C. §§ 919, 921(b)(3)).

The DBA includes a provision that makes an employer's liability under the statutory scheme exclusive:

> The liability of an employer, contractor (or any subcontractor or subordinate subcontractor with respect to the contract of such contractor) under this chapter shall be exclusive and in place of all other liability of such employer, contractor, subcontractor, or subordinate contractor to his employees (and their dependents) coming within the purview of this chapter, under the workmen's compensation law of any State, Territory, or other jurisdiction, irrespective of the place where the contract of hire of any such employee may have been made or entered into.

42 U.S.C. § 1651(c); *see also* 33 U.S.C. § 905(a) ("The liability of an employer prescribed in section 4 [of the LHWCA, 33 U.S.C. § 904] shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law . . . on

4

account of [an employee's] injury or death."). Like the LHWCA
and other workers' compensation statutes, the DBA represents a
compromise between employees and their employers: "[e]mployers
relinquish[] their defenses to tort actions in exchange for
limited and predictable liability," and "[e]mployees accept the
limited recovery because they receive prompt relief without the
expense, uncertainty, and delay that tort actions entail."
*Morrison-Knudsen Constr. Co. v. Dir., Office of Workers' Comp.
Programs*, 461 U.S. 624, 636 (1983).

The DBA incorporates the LHWCA's detailed administrative
procedures for the filing, adjudication, and payment of workers'
compensation claims. An injured employee or decedent is
required to give written notice of injury or death within thirty
days after either the date of the injury or death, or the date
the employee or beneficiary becomes aware or should have been
aware of the injury or death. *See* 33 U.S.C. § 912; 20 C.F.R. §
702.212. A claimant then has one year within which to file a
claim for compensation on account of that injury or death. *See*
33 U.S.C. § 913(a). Within ten days of learning that an
employee has been injured, an employer must send a report to the
Department of Labor "District Director." *See* 33 U.S.C. §
930(a); 20 C.F.R. § 702.201. Unless the employer is self-
insured, the employer's DBA insurance carrier is responsible for
processing and payment of an injured employee's claim. *See* 33

U.S.C. § 935; 20 C.F.R. § 703.115.  The District Director must be notified when payments commence and if payment is suspended for any reason.  *See* 20 C.F.R. § 702.234.  If the right to compensation is controverted by the employer, 33 U.S.C. § 914(d); 20 C.F.R. § 702.251, no benefits are due until a compensation award is made by the District Director.  Upon receiving a notice of controversion or an employee's challenge to reduction, suspension, or termination of benefits, the District Director commences adjudication proceedings.  *See* 20 C.F.R. §§ 702.252, 702.261-262.  There is a mandatory three-tier process for adjudicating claims: (1) informal mediation before the District Director; (2) formal hearings and fact-finding proceedings before an Administrative Law Judge; and (3) appellate review by the Department of Labor Benefits Review Board, which is subject to further appellate review by a court of competent jurisdiction.  *See* 33 U.S.C. § 921; 20 C.F.R. §§ 702.311-319 ("Action by District Directors"); 702.331-351 ("Formal Hearings"); 702.371-373 ("Interlocutory Matters"); 702.391-394 ("Appeals"); *see also* 42 U.S.C. § 1653(b).  An employee who successfully prosecutes a controverted claim is entitled to attorneys' fees.  *See* 33 U.S.C. § 928; 20 C.F.R. § 702.134.

The LHWCA's administrative scheme also provides for a number of penalties, which include, *inter alia*:

- penalties for failure to timely report employee injuries, *see* 33 U.S.C. § 930(e); 20 C.F.R. § 702.204;

- penalties paid directly to the employee for failure to timely pay pre-award or post-award compensation, *see* 33 U.S.C. §§ 914(e)-(f); 20 C.F.R. §§ 702.233, 702.350;

- penalties for making false statements or misrepresentations in reporting employee injuries, *see* 33 U.S.C. § 930(e); 20 C.F.R. § 702.204;

- criminal penalties and imprisonment for false statements or misrepresentations made to reduce, deny, or terminate benefits, 33 U.S.C. § 931(c); 20 C.F.R. § 702.217(b);

- criminal penalties, imprisonment, and other remedies for failure to pay compensation, *see* 33 U.S.C. § 938;

- judicial enforcement of a final compensation order, *see* 33 U.S.C. § 921(d); and

- penalties and the payment of lost wages for retaliation, wrongful discharge or discrimination with regard to employees who claim or attempt to claim benefits, *see* 33 U.S.C. § 948a; 20 C.F.R. § 702.271.

**B.   Factual and Procedural Background**

This action arises out of Defense Base Act claims filed by civilian government contractor employees who suffered injuries while working in Afghanistan and Iraq.  Plaintiffs, the contractor employees and/or their surviving relatives,[3] purport to bring this action on behalf of more than 10,000 similarly situated individuals who were denied benefits under the DBA.

---

[3] One plaintiff, Nicky Pool, is the nurse for another Plaintiff, Daniel Brink.  See SAC ¶¶ 477-88.  Ms. Pool alleges that CNA has refused to pay medical invoices that she sent for care of Mr. Brink.

7

According to the SAC, Defendants, in conspiracy with others, have sought to defeat the rights of American citizens and foreign nationals to receive their lawful compensation under the DBA.  SAC ¶ 2.  Throughout the two hundred page Complaint, Plaintiffs allege that Defendants:

- failed or refused to provide medical benefits owed to Plaintiffs under the DBA, *see, e.g.*, SAC ¶¶ 41, 57, 59, 62, 83, 103, 123, 133, 158, 178, 186, 210, 225, 260, 282, 315, 343, 366, 375, 382, 401, 422-24, 450, 495, 533, 546-47;

- cut off medical benefits owed under the DBA, *see, e.g.*, SAC ¶¶ 59, 61, 62, 75, 81, 106, 175, 200, 205, 214, 227, 240, 273, 276, 351, 377, 394;

- delayed the provision of medical benefits or compensation owed under the DBA, *see, e.g.*, SAC ¶¶ 59, 61, 87, 145, 262, 361, 376, 408, 423, 434, 540, 545;

- made false statements and misrepresentations to the DOL and Plaintiffs regarding the payment of their DBA benefits while actually reducing, denying or ignoring Plaintiffs' medical needs, *see, e.g.*, SAC ¶¶ 6, 59, 103, 109-10, 122, 135, 146, 150, 154, 163, 179, 202, 214, 273-74, 277, 283, 351, 357, 378, 461-62;

- failed to comply with DOL orders to pay DBA benefits, *see, e.g.*, SAC ¶¶ 59, 82, 242, 261, 316, 357, 384;

- threatened or discouraged workers from making DBA claims, *see, e.g.*, SAC ¶¶ 54, 55, 78-79, 132, 137, 250, 269; and

- terminated Plaintiffs after they were disabled by their DBA-covered injuries, *see, e.g.*, SAC ¶¶ 13, 62, 84, 111, 203, 215, 252-54, 260, 420.

Plaintiffs further state that the "[c]ontractors and their insurance carriers . . . have utilized fear, threats, implied threats, and elaborate ruses to deprive whole classes of . . . persons injured from effectively obtaining any benefits, have

employed devices and artifices to prevent any medical treatment for PTSD, [and have] accus[ed] persons of faking or of malingering . . . ." SAC ¶ 12. According to Plaintiffs, all of these actions exacerbated the harm that Plaintiffs had already suffered based on their DBA-covered injuries and caused additional financial and emotional harm. *See, e.g.*, SAC ¶¶ 52, 88, 126, 166, 182, 206, 217, 228, 245, 256, 268, 278, 283, 292, 320, 344, 394, 403, 412, 439, 463, 476, 523, 534. Plaintiffs emphasize that the damages they seek in this action are not related to what they claimed in their DBA actions. *See id.*

Plaintiffs filed their initial Complaint in this matter on September 26, 2011. They filed an Amended Complaint on November 22, 2011. On April 23, 2012, the Court granted Plaintiffs' unopposed request to file a Second Amended Complaint (hereinafter "SAC") pursuant to Federal Rule of Civil Procedure 15(a)(2). The SAC alleges claims for: retaliatory discharge and discrimination under the LHWCA, 33 U.S.C § 948a (Count I); violations of RICO, 18 U.S.C. § 1961 *et seq.* (Count II); bad faith, tortious breach of the covenant of good faith (Count III); unconscionable, fraudulent and deceptive trade practices (Count IV); civil conspiracy (Count V); violations of the ADA, 42 U.S.C. § 12101 *et seq.* (Count VI); outrage (Count VII); and

wrongful death (Count VIII).[4]   The Complaint seeks $2 billion in damages, as well as injunctive relief in order to prevent harm to Plaintiffs and those similarly situated, "and to require Defendants to comply with their legal obligations here and around the world, as to all past, present and future individuals who work in support of America's wars."  SAC ¶ 1.

On July 13 and 16, 2012, Defendants filed fourteen motions to dismiss, including two joint motions filed by the Contractor Defendants and the Insurer Defendants.  *See* n.2 *supra*.  The motions are ripe for determination by the Court.

## II.   LEGAL STANDARDS

Federal district courts are courts of limited jurisdiction, *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994), and a Rule 12(b)(1) motion for dismissal presents a threshold challenge to a court's jurisdiction, *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).  On a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  In evaluating such a motion, the Court must "accept as true all of the factual allegations contained in the complaint," *Wilson v. Dist. of*

---

[4] Plaintiffs additionally include a request for preliminary and permanent injunctive relief, which is titled Count IX but is properly construed as a claim for relief, rather than a separate cause of action.

*Columbia*, 269 F.R.D. 8, 11 (D.D.C. 2010) (citation omitted), and should review the complaint liberally while accepting all inferences favorable to the plaintiff, *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004).  Because subject matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion.  *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003).  Thus, to determine whether it has jurisdiction over a claim, the court may consider materials outside the pleadings where necessary to resolve disputed jurisdictional facts.  *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

Faced with motions to dismiss under Rule 12(b)(1) and Rule 12(b)(6), a court should first consider the Rule 12(b)(1) motion because "[o]nce a court 'determines that it lacks subject matter jurisdiction, it can proceed no further.'"  *Sledge v. United States*, 723 F. Supp. 2d 87, 91 (D.D.C. 2010) (quoting *Simpkins v. Dist. of Columbia*, 108 F.3d 366, 371 (D.C. Cir. 1997)).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice

11

of what the . . . claim is and the grounds upon which it rests."
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal
quotation marks and citations omitted).  "[W]hen ruling on
defendant's motion to dismiss, a judge must accept as true all
of the factual allegations contained in the complaint."
*Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C.
Cir. 2009) (quoting *Erikson v. Pardus*, 551 U.S. 89, 94 (2007)).
The court must also grant the plaintiff "the benefit of all
inferences that can be derived from the facts alleged." *Kowal
v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  A
court need not, however, "accept inferences drawn by plaintiffs
if such inferences are unsupported by the facts set out in the
complaint." *Id.*  In addition, "[t]hreadbare recitals of
elements of a cause of action, supported by mere conclusory
statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct.
1937, 1949 (2009).  Only a complaint that states a plausible
claim for relief survives a motion to dismiss.  *Id.*

## III. ANALYSIS

All of the Defendants argue that the Second Amended
Complaint should be dismissed in its entirety because the
Defense Base Act provides the exclusive process and forum to
resolve Plaintiffs' claims.  *See, e.g.*, Contractor Defs.' Joint
Mem. at 10-22; Insurer Defs.' Joint Mem. at 7-21; Khudairi
Group's Mem. at 13-17.  Defendants further argue that Plaintiffs

12

fail to state a claim under RICO, the ADA, or any of their common law causes of action. *See, e.g.*, Contractor Defs.' Joint Mem. at 23-37; Insurer Defs.' Joint Mem. at 21-36. Finally, several Defendants argue (1) that this Court lacks personal jurisdiction over them and that venue is improper, *see* Global Linguist Solutions' Mem. at 4-11; AECOM and CSA's Mem. at 4-7; USIS International's Mem. at 3-4, 9; CNA Financial's Mem. at 8-9; (2) that they are not proper parties to this action because there are no claims alleged directly against them, *see* Northrop Grumman's Mem. at 10-11; CNA Financial's Mem. at 5-8; Khudairi Group's Mem. at 17-22; and (3) that they were improperly named in the Complaint because they settled all claims with the relevant plaintiff (and counsel of record in this action) months before the initial Complaint was filed, *see* Exelis Systems' Mem. at 10-11. As discussed in more detail below, the Court concludes that the Defense Base Act preempts all of Plaintiffs' state law claims, as well as Plaintiffs' RICO and retaliatory discharge claims. The Court further concludes that Plaintiffs fail to state a claim under the ADA. The Court therefore does not reach the Defendants' alternative arguments.

**A.   Exclusivity of the DBA and the LHWCA**

    **1.   State Law Claims (Counts III, IV, V, VII, and VIII)**

The D.C. Circuit has held that the LHWCA, which is incorporated into the DBA, "provides a *comprehensive* scheme for compensating employees who are injured or killed in the course of employment." *Hall v. C&P Tel. Co.*, 809 F.2d 924, 926 (D.C. Cir. 1987) [*Hall II*] (emphasis in original).  In *Hall*, the plaintiff alleged that his employer had wrongfully delayed and denied his benefits under the D.C. Workers' Compensation Act, which at the time incorporated the LHWCA's statutory framework. The plaintiff filed suit for intentional infliction of emotional distress and bad-faith refusal to make timely workers' compensation benefits payments. *See Hall v. C&P Tel. Co.*, 793 F.2d 1354, 1355 (D.C. Cir. 1986) [*Hall I*].  On rehearing, the D.C. Circuit stated that the plaintiff, "[u]nsatisfied with the [LHWCA's] statutory *quid pro quo* . . . contend[ed] that employees should be permitted to bring tort claims when the employer refuses to make timely compensation payments with an *intent to injure*." *Hall II*, 809 F.2d at 926 (emphasis added). The court found, however, that recognizing such a cause of action would "undo[] the legislated compromise between the interests of employees and the concerns of employers." *Id.* (internal quotation marks and citation omitted).  Therefore, the

14

court held that tort claims based upon delayed or denied benefits "fall within the Act's exclusivity provisions," and it affirmed the district court's dismissal of the suit for lack of subject matter jurisdiction.  *See id.*

Courts in several other circuits have likewise found this exclusive remedy scheme to bar state tort claims like those alleged here.  *See Barnard v. Zapata Haynie Corp.*, 975 F.2d 919, 920 (1st Cir. 1992) (holding that the LHWCA preempts state tort claims for intentional failure to make timely compensation payments, as well as willful and malicious refusal to pay); *Atkinson v. Gates, McDonald & Co.*, 838 F.2d 808, 809-12 (5th Cir. 1988) (same); *Sample v. Johnson*, 771 F.2d 1335, 1344-47 (9th Cir. 1985) (same); *Nauert v. Ace Prop. & Cas. Ins. Co.*, No. 04-cv-2547, 2005 WL 2085544, at *3-5 (D. Colo. Aug. 27, 2005) (dismissing claims for bad faith failure to pay compensation based on exclusivity of DBA and LHWCA); *see also Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 834-35 (1976) ("We have consistently held that a narrowly tailored employee compensation scheme preempts the more general tort recovery statutes.").[5]

---

[5] Courts recognize that the LHWCA "grants the employer's insurance carrier . . . the same immunity which it grants the employer . . . ."  *Atkinson*, 838 F.2d at 811; *see also Barnard*, 975 F.2d at 921 (finding nonpayment claims against insurer preempted by LHWCA); *Johnson v. Am. Mut. Liab. Ins. Co.*, 559 F.2d 382, 383 (5th Cir. 1977) (finding that the LHWCA's exclusivity provision barred a negligence claim against an insurer).

In addition, the LHWCA precludes state tort claims alleging "false statement[s] or representation[s] for the purpose of reducing, denying, or terminating" a claimant's benefits. *Tipton v. Northrop Grumman Corp.*, No. 08-1267, 2008 WL 5378129, at *4 (E.D. La. Dec. 22, 2008).  As several courts have recognized, Section 931(c) of the LHWCA, as incorporated by the DBA, establishes an employer's exclusive liability for such alleged conduct in the form of criminal penalties and liability. *See Barnard*, 975 F.2d at 921 n.4; *Atkinson*, 838 F.2d at 811. Further, courts have found that the exclusive remedies and adjudication processes in the LWHCA preempt claims of retaliation or discrimination in connection with a claim for benefits.  *See LeSassier v. Chevron USA, Inc.*, 776 F.2d 506, 509-10 (5th Cir. 1985) (holding that exclusive administrative remedy 33 U.S.C. § 948a preempted state law retaliatory discharge claim); *Ravencraft v. Sundowner Offshore Servs.*, No. 97-3572, 1998 WL 246699, *2 (E.D. La. May 14, 1998) (same).

Plaintiffs do not address or acknowledge this Circuit's binding precedent set forth in *Hall.*  Instead, they make several arguments in an attempt to avoid the exclusivity of the DBA. None of these arguments are persuasive.

First, Plaintiffs rely on a purported exception recognized in *Martin v. Travelers Insurance Co.*, 497 F.2d 329 (1st Cir.

1974). *See* Pls.' Opp'n to Contractor Defs.' Joint Mem. at 9-11;
Pls.' Opp'n to Insurer Defs.' Joint Mem. at 24-26.  There, after
the defendant insurer had issued a benefits check to the
plaintiff, and the plaintiff had deposited and substantially
drawn on the check, the defendant stopped payment without
warning.  The First Circuit held that this constituted an
independent wrong, and that the plaintiff was not precluded
under the LHWCA from pursuing independent state law remedies.
497 F.2d at 330-31.  However, in a later opinion, the First
Circuit distinguished *Martin*, stating that the crux of the
complaint in *Martin* was "the insurer's callous stopping of
payment without warning when it should have realized that acute
harm might follow.  A stop payment on a sizable compensation
check which may have been deposited and drawn upon carries the
obvious possibility of embarrassment and distress."  *Barnard*,
975 F.2d at 920 (citing *Martin*, 497 F.2d at 331); *see also*
*Atkinson*, 838 F.2d at 814 n.6 ("[I]t is perhaps possible to
construe *Martin* as involving a situation where the conduct
complained of . . . would be actionable even if the compensation
benefits for which the drafts were given were not actually owing
to begin with. In other words, it might be possible to construe
*Martin* as presenting a situation where the plaintiff's recovery
would not depend on a determination that he was owed
compensation under the LHWCA . . . if this is not a correct

17

reading of *Martin*, then we expressly decline to follow that decision.").[6]  Departing from *Martin*, the court in *Barnard* found that the refusal to pay benefits and the failure to make timely payments, irrespective of defendants' intent, were the types of claims that fell under the exclusive remedies of the LWHCA.  *See* 975 F.2d at 920.[7]  In doing so, the First Circuit relied upon other circuits, including the D.C. Circuit, which had rejected similar attempts to bring state law tort claims based upon the failure to pay LHWCA benefits.  *See id.* at 921 (citing *Hall*, 809 F.2d at 924; *Atkinson*, 838 F.2d at 812; *Sample*, 771 F.2d at 1347); *see also Fisher v. Halliburton*, 667 F.3d 602, 619 (5th Cir. 2012) ("[A]llowing an injured employee to recover from his employer under this theory of intentional-tort liability would

---

[6] Given the Fifth Circuit's statement in *Atkinson* that it "expressly decline[d] to follow" *Martin* -- to the extent that it was inconsistent with the Fifth Circuit's holding that the LWHCA preempts claims for intentional torts -- Plaintiffs' reference to a "*Martin/Atkinson*" exception is puzzling, to say the least.

[7] The First Circuit noted one additional distinction: "*Martin* was decided by this court in 1974.  In 1984, Congress passed extensive amendments to the LHWCA following a debate over Union concerns regarding abuse by insurers arbitrarily withholding payment of benefits under the Act.  Congress ultimately enhanced the criminal penalty for such arbitrary withholdings from a misdemeanor to a felony, increasing the maximum fine to $ 10,000 and the maximum imprisonment to five years."  *Barnard*, 975 F.2d at 921 n.4 (citing 33 U.S.C. § 931(c) (1988); Longshoremen's and Harbor Worker's Compensation Act Amendments of 1981: Hearings on S. 1182 Before the Subcommittee on Labor of the Senate Committee on Labor and Human Resources, 97th Cong., 1st Sess. 433, 516-23, 545 (1981)).

inject into the DBA's workers' compensation scheme an element of uncertainty at odds with the statute's basic purpose: providing prompt relief for employees, and limited and predictable liability for employers.").[8] *Martin* thus conflicts with the precedent of this Circuit, as well as several others.

Even were the Court persuaded that *Martin* provided an exception to *Hall* -- which does not appear to be the case -- because Plaintiffs' claims all depend on a determination that they were owed compensation under the DBA, they do not fall under any such exception. Each of Plaintiffs' state law causes of action directly relates to Plaintiffs' claims for DBA benefits:

- With respect to Count III (Bad Faith and Tortious Breach of Covenant of Good Faith), Plaintiffs allege that Defendants engaged in "bad faith denial of claims, and bad faith refusal to pay reasonable and necessary medical bills" by, e.g., "unreasonably denying claims . . . , failing to properly and adequately investigate claims, delaying payments for medical bills and disability," SAC ¶¶ 587-92;

---

[8] *Ross v. Dyncorp*, 362 F. Supp. 2d 344 (D.D.C. 2005), is not to the contrary. There, another Judge in this District concluded that the DBA barred plaintiffs' negligence-based claims regarding the death of their son; however, the intentional infliction of emotional distress claim, which the court determined failed as a matter of law, was based upon the employer's communication with the family about the decedent's remains, and thus did not arise out of an entitlement to benefits under the DBA. *See* 362 F. Supp. 2d at 358-59. It does not appear that any party there argued that the DBA barred the intentional infliction of emotional distress claim.

- With respect to Count IV (Unconscionable, Fraudulent and Deceptive Trade Practices), Plaintiffs allege that Defendants "engaged in deceptive, unconscionable acts and practices by representing they provided all benefits covered under law, when in fact they did not intend to provide such, and . . . act[ed] with deception toward Plaintiffs concerning the characteristics of their . . . medical and disability benefits," SAC ¶¶ 593-601;

- With respect to Count V (Civil Conspiracy), Plaintiffs allege that Defendants engaged in a "conspiracy to deprive injured and disabled workers of DBA benefits in violation of the DBA," SAC ¶¶ 602-07;

- With respect to Count VII (Outrage, or Intentional Infliction of Emotional Distress), Plaintiffs allege that Defendants intended to inflict emotional distress on Plaintiffs or knew or should have known that emotional distress was likely to result from their denial of DBA benefits, SAC ¶¶ 619-25; and

- With respect to Count VIII (Wrongful Death), Plaintiffs allege that those Plaintiffs who are deceased died as a result of the neglect and intentional misconduct of Defendants, SAC ¶¶ 626-31.[9]

As Plaintiffs reaffirm in their own Opposition briefs, the crux of their Complaint is that "Defendants' failure to make the proper compensation payments resulted in the infliction of harm on Plaintiffs, which Defendants could have reasonably anticipated . . . . Defendants' delay, termination, and/or minimization of compensation have aggravated Plaintiffs' injuries." Pls.' Opp'n to Contractor Defs.' Joint Mem. at 16;

---

[9] Plaintiffs also allege that their claims for detrimental reliance and breach of contract are valid. *See, e.g.*, Pls.' Opp'n to Contractor Defs.' Joint Mem. at 14-15, 22; Pls.' Opp'n to Insurer Defs.' Joint Mem. at 14-15, 21. Plaintiffs did not include these claims in their Complaint and cannot add them in their Opposition briefs.

*see also* Pls.' Opp'n to Insurer Defs.' Joint Mem. at 16. Plaintiffs claim that Defendants, in conspiracy with each other, refused to pay for Plaintiffs' medical benefits, terminated their medical benefits, repeatedly lied and made misrepresentations to DOL regarding payments for medical treatment, wrongfully terminated certain Plaintiffs, and provided inadequate care.  *See* Pls.' Opp'n to Contractor Defs.' Joint Mem. at 20-22.  Although Plaintiffs allege that these actions exacerbated their underlying employment-related injuries and/or that the claims process itself caused them undue stress and financial hardship, it is clear that Plaintiffs' state law causes of action all arise out of their underlying claims to DBA benefits and thus are barred by the exclusive scheme set forth in the DBA and LHWCA.

Plaintiffs also argue that the exclusive remedy bar only exists as to damages "on account of the injury or death" claimed under the DBA, not for damages intentionally, fraudulently, and in bad faith inflicted by Defendants after they have accepted the claim and are paying benefits.  *See* Pls.' Opp'n to Contractor Defs.' Joint Mem. at 7-8; Pls.' Opp'n to Insurer Defs.' Joint Mem. at 7.  According to Plaintiffs, because their injuries occurred outside the scope of their employment, the exclusive remedy is inapplicable to their claims.  *See* Pls.' Opp'n to Contractor Defs.' Joint Mem. at 26-27; Pls.' Opp'n to

21

Insurer Defs.' Joint Mem. at 10-11, 23-24, 30-31.  But the D.C.
Circuit rejected these identical arguments in *Hall*, as did the
Fifth Circuit in *Atkinson*.  *See Hall*, 809 F.2d at 926; *Atkinson*,
838 F.2d at 811; *see also Nauert*, 2005 WL 2085544, at *3-5.  As
the court stated in *Atkinson*:

> [Plaintiff] asserts that the exclusivity provision of
> section 5(a) applies only to liability "on account of such
> injury," and that . . . the damages which she claims for
> the subsequent failure to pay compensation benefits cannot
> possibly arise out of her employment.  . . . Th[is]
> contention overlooks the fact that [plaintiff's] claim
> necessarily presupposes an obligation to pay LHWCA
> benefits, and hence necessarily arises out of her on-the-
> job injury.

838 F.2d at 811 (internal citation omitted).[10]

Alternatively, Plaintiffs argue that Defendants' "failure
to secure payment of compensation," through false statements and
representations estops them from asserting preemption.  Pls.'
Opp'n to Contractor Defs.' Joint Mem. at 11; *see also* Pls.'
Opp'n to Insurer Defs.' Joint Mem. at 26-27.[11]  The LHWCA
provides an exception to the exclusivity-of-remedy provision
when "an employer fails to secure payment of compensation as

---

[10] Plaintiffs' reliance on numerous state court cases
interpreting either state worker's compensation acts or state
law regarding adequate remedies are neither relevant nor
persuasive.

[11] The DBA requires that a contractor must "provide for . .
. the payment of compensation and other benefits under the
provisions of" the Act and must "maintain in full force and
effect during the terms of such contract . . . the said security
for the payment of such compensation and benefits."  42 U.S.C. §
1651(a)(4); *see also* 33 U.S.C. § 932(a).

required by" the Act.  33 U.S.C. § 905(a).  However, implementing regulations to the DBA make clear that an employer "secures payment of compensation" by obtaining a DBA "workers' compensation insurance" policy "before commencing performance," and maintaining that insurance "until performance is completed." 48 C.F.R. § 52.228-3.  Plaintiffs do not allege that any of the Defendants failed to obtain and maintain such an insurance policy, and this argument thus fails.

Finally, Plaintiffs argue quite perplexingly that the exclusive remedy provision of the DBA does not apply to them because they are independent contractors, not employees, and thus are not covered by the DBA.  They also assert that they are suing certain Defendants who were not their actual employers or insurers.  *See* Pls.' Opp'n to Contractor Defs.' Joint Mem. at 24-25; Pls.' Opp'n to Insurer Defs.' Joint Mem. at 28-29.  These arguments undermine the premise of the claims set forth in the Complaint, all of which allege that Plaintiffs were harmed by Defendants' refusal or failure to timely provide the DBA benefits to which Plaintiffs were entitled.

The allegations in the Complaint are extremely serious and deeply disturbing.  However, Congress has expressly set forth its intention that employers' liability under the DBA "shall be exclusive and in place of all other liability."  42 U.S.C. § 1651(c); *see also Hall*, 809 F.2d at 925-26.  Based on the

23

binding authority from this Circuit, as well as persuasive authority from several other circuits, the Court finds that all of Plaintiffs' state law claims are barred by the exclusive scheme set forth in the DBA and the LHWCA.  Accordingly, Counts III, IV, V, VII, and VIII are hereby **DISMISSED**.

### 2.   Federal Claims (Counts I and II)

Defendants further argue that Plaintiffs' federal claims are barred.  As the D.C. Circuit and several others have recognized, federal enabling statutes that provide exclusive administrative remedies bar RICO actions for alleged violations of those schemes.  *See Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220 (D.C. Cir. 1991) (affirming dismissal of RICO claims as barred by exclusive statutory remedies under the Federal Services Contract Act); *Bridges v. Blue Cross & Blue Shield Ass'n*, 935 F. Supp. 37, 43 (D.D.C. 1996) (finding that the Federal Employees Health Benefits Act's administrative remedy bars RICO claims); *see also, e.g., Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 522-25 (11th Cir. 2000) *Bodimetric Health Servs., Inc. v. Aetna Life & Cas.*, 903 F.2d 480, 486-87 (7th Cir. 1990); *Norman v. Niagara Mohawk Power Corp.*, 873 F.2d 634, 637-38 (2d Cir. 1989); *cf. Brown v. Cassens Transport Co.*, 675 F.3d 946, 954-55 (6th Cir. 2012) (noting that federal courts "have held RICO inapplicable to claims that should have been raised before federal agencies that had

24

exclusive-remedy clauses in their enabling statutes," but finding that state statute did not preempt RICO claim).

In *Danielsen*, the D.C. Circuit held that the plaintiffs' claims against their government contractor employer were precluded by the comprehensive statutory scheme under the Service Contract Act, 41 U.S.C. § 351, *et seq.* There, the plaintiff-employees alleged that the defendants had entered into contracts with the government using improper wage classifications (in violation of the Service Contract Act), and had repeatedly used the mails to further the contracts, thus constituting to mail fraud under RICO. *See* 941 F.2d at 1225-26. However, the court held that because the Act provided "an extensive series of regulations governing the wage determination process, including procedures for enforcement and review," the administrative remedies available under the Service Contract Act were "exclusive" and did not give rise to a separate cause of action under RICO. *See id.* at 1226-29. This Court later applied the holding in *Danielsen* to the Federal Employee Health Benefits Act ("FEHBA"), 5 U.S.C. § 8901 *et seq.*, which authorizes the U.S. Office of Personnel Management "to procure and administer health benefits plans for federal workers by contracting with private health insurance carriers." *Bridges*, 935 F. Supp. at 39. The court stated, "[a]lthough the governing statute in this case is different [from that in *Danielsen*], the

25

underlying principles are the same, and the claims cannot stand." *Id.* at 40 (citing *Danielsen*, 941 F.2d 1220). Because the FEHBA created a "comprehensive administrative enforcement mechanism for review of disputed claims," the court found that the RICO claims were precluded and must be dismissed. *See id.* at 41-43 ("The FEHBA leaves no room for a remedy under RICO; the broad enforcement and oversight powers of the OPM established in the statute indicate that the exclusive remedy for an action cognizable under the FEHBA lies under the FEHBA, not under another federal statute.").

Plaintiffs do not respond to this argument or this authority whatsoever. For this reason alone, the Court could treat this argument as conceded and dismiss all of the federal claims. *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (citation omitted)). However, the Court has analyzed the arguments with respect to each of Plaintiffs' federal claims individually.

The allegations that form the basis of Plaintiffs' RICO claim (Count II) are directly addressed by the comprehensive

26

administrative procedures and remedies available under the DBA.
For example, Plaintiffs claim that Defendants conspired to
"[make] misrepresent[ations] to injured parties and the DOL and
commit crimes under the DBA by denying claims using fraud . . .
."  SAC ¶ 573.  However, Section 931(c) of the LHWCA, which is
incorporated in the DBA, provides specific criminal penalties
against any "employer, his duly authorized agent, or an employee
of an insurance carrier who knowingly and willfully makes a
false statement or representation for the purpose of reducing,
denying, or terminating benefits to an injured employee . . . ."
33 U.S.C. § 931(c).  Likewise, Plaintiffs' allegation that
Defendants committed "various forms of wire and mail fraud" to
"delay payments to providers or to claimants" is addressed in
Sections 914(e) and (f) of the LHWCA, as incorporated by the
DBA, which provide financial penalties for delays in
compensation.  *See* 33 U.S.C. §§ 914(e), (f); 20 C.F.R. §§
702.233, 702.350.  Based upon the reasoning of *Danielsen* and
*Bridges*, the Court concludes that to permit Plaintiffs to
convert non-compliance with the DBA -- a statute with its own
comprehensive administrative remedies -- into mail and wire
fraud and thereby maintain a civil RICO action would contradict
the purpose and intent of the DBA.[12]  Accordingly, Plaintiffs'
RICO claim (Count II) is **DISMISSED**.

---

[12] Even if Plaintiffs' RICO claim were not barred by the

exclusive remedies in the DBA, the Court would find that
Plaintiffs fail to state a cause of action under RICO.  In order
to make out a claim under RICO, a plaintiff must allege the
following elements: "(1) conduct (2) of an enterprise (3)
through a pattern (4) of racketeering activity." *Sedima,
S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).  To show such a
pattern, RICO requires at least two predicate criminal
racketeering acts over a ten-year period.  *See* 18 U.S.C. §
1961(5).  "[T]hese predicate offenses are acts punishable under
certain state and federal criminal laws, including mail and wire
fraud." *Western Assocs. Ltd. P'ship ex rel. Ave. Assocs. Ltd.
v. Market Square Assocs.*, 235 F.3d 629, 633 (D.C. Cir. 2001)
(citing 18 U.S.C. § 1961(1)(B)).  First, Plaintiffs fail to
allege the existence of a RICO enterprise.  An "enterprise is an
entity, . . . a group of persons associated together for a
common purpose of engaging in a course of conduct." *United
States v. Turkette*, 452 U.S. 576, 583 (1981).  Plaintiffs allege
that Defendants associated with an undefined "RICO enterprise of
individuals" that included "insurance companies, attorneys,
adjusters, third party medical providers, third party case
administrators, third party investigators and contractors."  SAC
¶ 576.  Plaintiffs completely fail to provide sufficient factual
allegations to suggest, however, that the Defendants combined as
a unit with any semblance of (1) a common purpose, (2)
organization, and/or (3) continuity.  *See Doe I v. State of
Israel*, 400 F. Supp. 2d 86, 119-20 (D.D.C. 2005); *see also In re
Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 374 (3d Cir.
2010); *McCullough v. Zimmer, Inc.*, 382 F. App'x 225, 231 (3d
Cir. 2010) ("Simply listing a string of individuals or entities
that engaged in illegal conduct, without more, is insufficient
to allege the existence of a RICO enterprise.").  Second,
Plaintiffs fail to allege any predicate acts with particularity.
The predicate acts of an alleged RICO fraud must be pled with
particularity as required under the heightened pleading standard
of Rule 9(b) of the Federal Rules of Civil Procedure.  *See
Prunte v. Universal Music Grp.*, 484 F. Supp. 2d 32, 42 (D.D.C.
2007).  Plaintiffs fail to allege with any specificity the "who,
what, when, where, and how" related to their mail and wire fraud
claims -- they fail to allege specific fraudulent statements,
who made the statements, what was said, when or where these
statements were made, and how or why the alleged statements were
fraudulent.  *See* Insurer Defs.' Joint Mem. at 27-29.  Finally,
Plaintiffs fail to allege a RICO conspiracy under Section
1962(d).  Even had Plaintiffs properly alleged two predicate
acts of mail, wire, or bank fraud, Plaintiffs nonetheless fail
to plead facts demonstrating that any of the Defendants reached

Furthermore, Count I, which alleges a violation of the LHWCA's anti-retaliation and discrimination provision, 33 U.S.C. § 948a, is also barred.[13]  Plaintiffs allege that they "were discriminated against in the terms, conditions, and benefits of employment, retirement, insurance, and status due to their accessing or attempting to access the DBA system . . . ."  SAC ¶ 565.  Yet Plaintiffs seek precisely the same remedies provided by the DBA for such alleged conduct.  *Id.* at ¶ 570 (seeking reinstatement or damages and attorneys' fees); *cf.* § 948a ("Any employee so discriminated against shall be restored to his employment and shall be compensated by his employer for any loss of wages arising out of such discrimination.").  Plaintiffs may not pursue their claims for retaliation and discrimination in the federal courts without first exhausting their administrative remedies through the exclusive process provided in the LHWCA.  *See* § 948a; 20 C.F.R. §§ 702.271-274; *see also LeSassier*, 776 F.2d at 508-10; *Slightom v. Nat'l Maint. & Repair, Inc.*, 747 F.

---

an agreement to commit the two predicate acts.  Plaintiffs' RICO allegations are precisely the type of threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, that the Supreme Court has found insufficient to state a claim for relief under Rule 12(b)(6), let alone under Rule 9(b).  *See Iqbal*, 129 S. Ct. at 1949.

[13] Section 948a provides, in pertinent part: "It shall be unlawful for any employer or his duly authorized agent to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim compensation from such employer . . . ." 33 U.S.C. § 948a.

Supp. 2d 1032, 1037-38 (S.D. Ill. 2010).  Plaintiffs nowhere

allege that they have exhausted their administrative remedies.

Moreover, Plaintiffs' reliance on cases involving state law

wrongful discharge claims is irrelevant and not persuasive.[14]

Accordingly, Count I is also **DISMISSED**.

 **B.   ADA Claims (Count VI)**

  Three individual Plaintiffs, Merlin Clark, Harbee Kreesha,

and Mohsen Alsaleh, bring claims for violation of the ADA

against their employers, Ronco Consulting (as to Clark) and

Global Linguist Solutions (as to Kreesha and Alsaleh).  *See* SAC

¶¶ 111, 113, 203, 215, 608-618.  Specifically, Plaintiffs allege

that they were fired after they became disabled, and that their

disabilities "were motivating factors in the decisions of

Defendant contractors not to offer jobs with accommodations, or

to fire persons who were . . . being treated for DBA injuries,

or to rehire but fail to accommodate restrictions or

disabilities reasonably."  SAC ¶¶ 611-13.  The Court interprets

---

[14] In addition, the plain text of Section 948a states that "the employer alone and not his [insurance] carrier shall be liable for such penalties and payments."  Plaintiffs explicitly concede that this is so, and then attempt to argue that they may nonetheless bring claims against the Insurer Defendants under state statutes.  *See* Pls.' Opp'n to Insurer Defs.' Joint Mem. at 32-33.  However, the Complaint does not allege claims of retaliation under state statutes, and Plaintiffs cannot escape the explicit language of Section 948a, which precludes them from asserting retaliation and discrimination claims against the Insurer Defendants even had they exhausted their administrative remedies.

these allegations as including two possible claims under the
ADA: (1) failure to accommodate, and (2) disability
discrimination for firing Plaintiffs.

The ADA prohibits an employer from discriminating against
an "individual with a disability" who can perform the essential
functions of his job with "reasonable accommodations." 42
U.S.C. § 12112(a)-(b). As relevant here, to "'discriminate' is
defined to include 'not making reasonable accommodations to the
known physical or mental limitations of an otherwise qualified
individual with a disability . . . , unless [the employer]
demonstrates that the accommodation would impose an undue
hardship on the operation of the business . . . .'" *Woodruff v.
Peters*, 482 F.3d 521, 527 (D.C. Cir. 2007) (quoting 42 U.S.C. §
12112(b)(5)(A)). A "qualified individual" is "an individual
who, with or without reasonable accommodation, can perform the
essential functions of the employment position that such
individual holds or desires." 42 U.S.C. § 12111(8). The ADA
defines "disability" as "a physical or mental impairment that
substantially limits one or more of the major life activities
of" an individual. 42 U.S.C. § 12102(2)(A).

To establish a *prima facie* case of unlawful discrimination
based on a failure to accommodate under the ADA, a plaintiff
must show that: (1) he is a qualified individual with a
disability within the meaning of the ADA; (2) that the employer

31

had notice of his disability; (3) there was some reasonable accommodation denied to him; and (4) such accommodation would have enabled him to perform the essential functions of this job." *Saunders v. Galliher & Huguely Assocs., Inc.*, 741 F. Supp. 2d 245, 248 (D.D.C. 2010) (citing *Duncan v. Wash. Metro. Area Transit Auth.*, 240 F.3d 1110, 1114 (D.C. Cir. 2001)).  The employee bears the burden of proving that he is qualified. *Miller v. Hersman*, 759 F. Supp. 2d 1, 10 (D.D.C. 2011).  In addition, "[a]n underlying assumption of any reasonable accommodation claim is that the plaintiff-employee has requested an accommodation which the defendant-employer has denied." *Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999); *Saunders*, 741 F. Supp. 2d at 249 ("It is the employee's burden to identify reasonable accommodations which would allow him to perform the essential functions of the job . . . .").

A disability discrimination claim under the ADA is subject to the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  First, the plaintiff must establish a *prima facie* case of discrimination under the ADA by showing that he: (1) had a disability; (2) was qualified for the position with or without a reasonable accommodation; and (3) suffered an adverse employment action because of the disability. *Swanks v. Wash. Metro. Area Transit Auth.*, 179 F.3d 929, 933-34 (D.C. Cir. 1999).  If the plaintiff does so, the burden shifts

back to the employer to articulate a "legitimate non-discriminatory reason for its action," leaving the plaintiff an opportunity to prove that the employer's proffered justification was not the true reason, but a pretext for discrimination. *Id.* (citing *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1289 (D.C. Cir. 1998) (*en banc*)).

Plaintiffs have failed to state the essential elements of a claim for either failure to accommodate or disability discrimination under the ADA. First, Plaintiffs make only conclusory allegations regarding each individual Plaintiff's status as a "qualified individual" under the ADA. Plaintiff Kreesha alleges that he has Post-Traumatic Stress Disorder, and that this "substantially limits his major life activities." Pls.' Opp'n to Contractor Defs.' Joint Mem. at 42; *see also* SAC ¶¶ 193-95. Plaintiff Clark alleges that he suffered numerous physical injuries and a traumatic brain injury as a result of an explosion, and that these injuries "qualify [him] as having a disability under the ADA." Pls.' Opp'n to Contractor Defs.' Joint Mem. at 42; *see also* SAC ¶¶ 90-100. Finally, Plaintiff Alsaleh claims that he contracted Leishmaniasis after being bitten by a sand fly. *See* SAC ¶¶ 209-210. Alsaleh also claims that he has conditions including "cardiac issues, chest pain and pressure, lung issues, shortness of breath and collapse, sleep disorder . . . ." *Id.* ¶¶ 212-13. These allegations are

33

insufficient for Plaintiffs to meet their burden of demonstrating that their injuries substantially limited a major life activity and thus qualified them as disabled under the ADA. Moreover, Plaintiffs completely fail to allege that they requested any accommodation for their disabilities that their employers then denied.  They have therefore failed to state a claim for either failure to accommodate or disability discrimination under the ADA.  *See Hovsepyan v. Blaya*, 770 F. Supp. 2d 259, 266 (D.D.C. 2011); *Reynolds v. U.S. Capitol Police Bd.*, 357 F. Supp. 2d 2, 18 (D.D.C. 2004).

Accordingly, Plaintiffs' ADA claims (Count VI) are **DISMISSED**.[15]

IV.  **CONCLUSION**

For the foregoing reasons, the Court concludes that the exclusive remedies in the DBA preclude Plaintiffs' state law claims, their RICO claim, and their claim under Section 948a of the LHWCA and must therefore be dismissed pursuant to Rule 12(b)(1).  The Court further concludes that Plaintiffs' ADA

---

[15] Global Linguist Solutions ("GLS") argues alternatively in its motion to dismiss that "should any claims survive," the Court should dismiss the allegations against GLS pursuant to either Rule 12(b)(2) or 12(b)(3) of the Federal Rules of Civil Procedure because this Court lacks personal jurisdiction over GLS and venue is improper in the District of Columbia.  Global Linguist Solutions' Mem. at 1-2.  Because the Court concludes that none of Plaintiffs' claims, including the two ADA claims against GLS, survive, the Court does not reach GLS's alternative arguments.

claims fail to state a claim for relief under Rule 12(b)(6).

Accordingly, Defendants' Motions to Dismiss are hereby **GRANTED**

and the Second Amended Complaint is **DISMISSED**.  A separate Order

accompanies this Memorandum Opinion.

**SIGNED:**    **Emmet G. Sullivan**
               **United States District Judge**
               **December 21, 2012**